IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Walter Thomas, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1784 |
| | ) | RJL |
| | ) | |
| Natwar Ghandi, | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF WALTER THOMAS' MEMORANDUM IN OPPOSITION
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGEMENT**

**Background**

On September 8, 2005, Plaintiff Walter Thomas, (Mr. Thomas), filed a complaint asserting

discrimination by the District of Columbia Office of the Chief Financial Officer (OCFO), based

upon his age, race, sex, and disability, *Complaint,* R. 1.   Mr. Thomas, an African-American

male, age 62, on the date of his termination was employed in a Career Service position of

Support Specialist DS-301-13, in the General Services Unit of the Department of Tax and

Revenue, *Plaintiff's Statement of Genuine Issues* no. 3.[1]  On April 2, 2007, The defendant filed a

partial motion for summary judgment seeking dismissal of Mr. Thomas's claims of

discrimination based upon his race, sex, and disability,  *Memorandum of Law in Support of*

*Defendant's Motion for Partial Summary Judgment,* R. 14-2, p. 1-2.  Defendant asserts Mr.

Thomas cannot establish a prima facie case for his claims of race, sex, and disability

discrimination in not being selected for the Lead Support Specialist DS-3342-11 position; cannot

establish a prima facie case for failure to be considered for the positions of Lead Logistics

Management Specialist DS-346-11 and Special Assistant MSS-346-13; and Mr. Thomas is not a

---

[1] Plaintiff's Statement of Genuine Issues is referenced as "Gen. Iss.___."

disabled individual, *Id.*

## Statement of Facts

On December 10, 2002, the OCFO announced the reorganization of the Office of Government Business and Human Capital, which included the abolishment of positions in the General Services Unit and reestablishment of the positions in the Office of Management and Administration, *Gen. Iss.* no. 6-7.  On December 12, 2002, Mr. Thomas was issued a letter notifying him of the reorganization; informing him all vacancies in OCFO would be posted; eligible internal candidates would be automatically forwarded for an interview; and only highly qualified and best qualified  external candidates would be referred for an interview, *Gen. Iss.* no. 8-9.  Jo Ann Smoak, (Ms. Smoak), Executive Director of the Office of Management and Administration (OMA) stated internal candidates had first rights to positions and external candidates were only to be interviewed after a determination internal candidates were not competent or qualified, *Gen.  Iss.* no. 8.

Mr. Thomas had a degenerative vision impairment of nystagmus and keratoconus, which required him to wear both contact lens and glasses; impaired his ability to read and work with computers; and which the OCFO accommodated on his date of hire, *Gen. Iss.* no.  3, 30.

Mr. Thomas applied for two positions of Lead Support Specialist DS-342-11, Vacancy Announcement AD-RS-MA017, *Gen. Iss.* no. 9[sic].  Mr. Thomas was not informed of the vacant positions of Lead Logistics Management Specialist DS-346-11 and Special Assistant MSS-346-13, *Id.*  Mr. Thomas, the only internal applicant,  was interviewed for the positions of Lead Support Specialist, on March 12, 2003; was not selected; and Barry Edmonds, an African-American male, age forty-one, with no qualifying disability, was selected, *Gen. Iss.* no. 10.  Ms.

2

Smoak stated her impression of Mr. Thomas' appearance at the interview was dirty and disheveled and he had virtually "retired in place," *Gen. Iss.* No. 15.  Ms. Smoak testified Diane Camilleri, (Ms. Camilleri) a Caucasian female, Director of Human Resources, was in charge of the selection process and made the decision on the selection, *Gen. Iss.* no. 14.  Ms. Camilleri participated in Mr. Thomas' interview; believed Mr. Thomas was dirty and disheveled for the interview; rated Mr. Thomas with an interview score of 21; decided Mr. Thomas was not selected; and selected Barry Edmonds for the position, *Gen. Iss.* no. 12-15.  Stanley Morel, (Mr. Morel), a Caucasian male,  an Assistant to Ms. Camilleri, was aware of Mr. Thomas' vision impairment, *Gen. Iss.* no. 29.  Alphonso Lister, (Mr. Lister), an African-American male, began employment with OMA on March 10, 2003; participated in Mr. Thomas March 12, 2003 interview; rated Mr. Thomas' interview a 20; stated Mr. Thomas was dressed in a shirt and slacks; stated he could not recall any  internal candidates, except Mr. Thomas; and stated he had no role in the actual selection, *Gen. Iss.* no. 13, 14, 17.  After the interview, Mr. Lister informed Mr. Thomas, the OCFO did not want people of his age employed in positions, *Gen. Iss.*  no. 24.

Mr. Thomas had thirty years of work experience in logistics and operations, *Gen. Iss.* no. 11.  Mr. Edmonds had experience as a delivery supervisor for the Wall Street Journal and seven years as a Support Services Clerk  for the D.C. Council, *Id.*

On March 28, 2003, Mr. Thomas was informed he was not selected for the positions of Lead Support Specialist; given a letter of termination; told to leave the office immediately; and was not informed of the vacancies of Lead Logistics Management Specialist and Special Assistant, *Gen. Iss.* no. 21.  Mr. Lister had completed the process to fill the vacancies of Lead Logistics Management Specialist and Special Assistant, between March 10, 2003 and March 31, 2003,

3

*Gen. Iss.* no. 22.  Ms. Smoak said the position of Lead Support Specialist and Lead Logistics

Management Specialist were the same position, *Id*.  On April 3, 2003, the OCFO announced the

vacant positions of Lead Logistics Management Specialist, DS-346-11 and Special Assistant

MSS-346-13, *Gen. Iss.* no. 23.  Barbara Bryant, a Caucasian female, younger than Mr. Thomas

was selected for the position of Special Assistant, *Gen. Iss* no.23.

Mr. Thomas's Notice of Right to Sue from the U.S. Justice Department was received on

June 16, 2005, *Gen. Iss*. no. 15.  On June 7, 2005, the Equal Employment Opportunity

Commission mailed, by regular mail,  a Notice of Right to Sue to Mr. Thomas, *Id*.

## Standard of Law

Summary Judgment is not available when material issues of fact are in dispute or when

undisputed facts are subject to divergent inferences*, Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir.

1994). In the context of employment discrimination*, Reeves v. Sanderson Plumbing Products,*

*Inc.,* 530 U.S. 133, 150-51(2000), citing *Aka v. Washington Hospital Center*, 156 F.3d. 1284,

(1998), held the standard for summary judgment requires the Court to draw all inferences in

favor of the nonmoving party; not make credibility determinations or weigh the evidence; review

the record giving credence to the evidence favoring the nonmovant; and disregard all evidence of

the moving party that a jury is not required to believe.  The Court should only give credence to

evidence of the moving party which is uncontradicted, unimpeached, and comes from

disinterested witnesses, *Id; In accord*, *Non-movant's statements assumed as true, unless*

*conclusory allegations*, *Hussain v. Nicholson*, 435 F.3d. 359, 365 (D.C. Cir. 2006).. Evidence of

a disparity of qualifications between a plaintiff and a selected applicant for a position may be

used as evidence of pretext, in a case of nonselection for a position, *Ash v. Tyson Foods, Inc*, 546

U.S. ___, 126 S.Ct. 1195, 1197-8 (2006). A jury may infer discrimination, when an employer does not select a "significantly" or "markedly" more qualified candidate for a position and courts should treat explanations which rely on subjective considerations with caution, *Aka v. Washington Hospital Center,* 156 F.3d. 1284, 1294-5, 1297-9 (D.C. Cir. 1998), *aff'd. Barnette v. Chertoff*, 453 F.3d. 513, 517 (D.C. Cir. 2006).

In an employment selection, a plaintiff establishes a prima facie case of discrimination by showing he is a member of the protected class; he applied for a position; was qualified; was rejected, and the employer continued to seek applicants who were no more qualified than the plaintiff, *Stella v. Mineta*, 248 F.3d. 135, 145-6 (D.C. Cir. 2002). Selection of individuals in the same protected class does not defeat a plaintiff's prima facie case and may not be used as grounds to dismiss a plaintiff's claim of discrimination, *Id.*

*Sutton v. United Airlines, Inc.* 527 U.S. 471, 488 (1999) held an individual who uses corrective devices to correct a disability is covered by the Americans with Disabilities Act, 29 U.S.C. § 12102(2)(A). Individuals who are regarded as having a physical or mental impairment by an employer are also covered by the ADA to protect such individuals from rejection by employers myths, and stereotype associated with disabilities, *Id.* at 489-90.

In 1995, the OCFO was granted authority over the administration of the District of Columbia governments, financial operations, The District of Columbia Financial Responsibility Act, Pub. . Law 104-8, Sec. 302(d)*,* 109 Stat. 141. The statute set forth the authority of the OCFO, during a control year and Sec. 302(d) provided , the OCFO authority to exercise supervision over the D.C. Treasurer; administer borrowing, cash management, centralized payroll and retirement systems; exercise responsibility over D.C. government accounting policies; and prepare appropriate

accounting reports.  D.C. Code § 1-204.24a (2001 Ed.) established the OCFO; transferred the

Department of Tax and Revenue to the OCFO; and outlined the terms for removal of the Chief

Financial Officer and office heads.  D.C. Code § 1-204.24(b) (2001 Ed.). Outlines the removal of

the Chief Financial Officer in a control year and other years.  The 1996 Appropriations Act,

Public Law 104-134, Sec. 152 (a), 110 Stat. 1321-102,  for the period of September 30, 1996 to

September 30, 1997 granted the OCFO the authority for at will employment for all personnel,

including the Department of Tax and Revenue.    The authority for at will employment expired in

1999, *Alexis v. District of Columbia*, 44 F.Supp.2d. 331, 343, n.9(D.D.C. 1999).

## Argument

### I. The Criteria For A Prima Facie Case Does Not Require Selection Of An Individual Outside  The Protected Class

To establish a prima facie case for a claim of race, sex, and disability discrimination, Mr.

Thomas is required to show that he is a member of a protected class; was qualified for the

position; was rejected; and the vacancy remained open and the employer continued to seek

candidates of his qualifications, *Stella*, supra. Mr. Thomas need not show a person outside the

protected class was selected for the position and may use as evidence of pretext, the lesser

qualifications of the individual selected, *Id, Ash, supra., Barnette, supra.*  It is undisputed that

Mr. Thomas is an African-American male, a member of a protected group, under the law.

Mr. Thomas also qualifies as an individual protected by the ADA.  Mr. Thomas' vision

impairment was recognized by the OCFO and accommodated by the use of special equipment for

his computer.  Defendant, in its motion for partial summary judgment, R. 14-2, 17-20, disputes

Mr. Thomas' disability.  *Sutton, supra.* affords an individual, such as Mr. Thomas, the protection

of the ADA.  Mr. Thomas's vision impairment is a degenerative condition which can only be corrected by the wearing of both glasses and contact lenses, *Gen. Iss.* no.3-4, 29.  Corrective aids for a disability or impairment do not remove the individuals protection under the ADA.  The ability to see is a major life activity and OCFO's recognition of the impairment is evidence it regarded Mr. Thomas as a qualified individual under the ADA.  Mr. Thomas is a member of the protected group under the law.

    In this case, defendant relies upon the subjective witness testimony of Ms. Camilleri and Ms. Smoak, for the positions of Lead Support Specialist,  that Mr. Thomas did not do well in the interview and his appearance was disheveled. Ms. Camilleri and Ms. Smoak testified only to subjective qualities of Mr. Thomas and provided no objective testimony which reflected a rejection of Mr. Thomas based upon his qualifications.  Mr. Edmonds, according to Ms. Camilleri, Ms. Smoak, and Mr. Lister, had a great interview, but they could not attest to his qualifications for the position, *Gen. Iss.* 14-17.  Ms. Smoak believed Mr. Edmonds had worked for The Washington Post and had experience with high level officials of the D.C. City Council, *Gen. Iss.*  no. 17.  Mr. Edmonds had worked as a delivery supervisor for the Wall Street Journal; had been a Support Clerk, DS-303-4/6 for the D.C. City Council; and had no experience in real estate management, a required ranking factor for the position, *Gen. Iss.*  no. 11.  Mr. Thomas had more than thirty years of experience in logistics, seven years of which were spent in the OCFO, *Id.*  Albert Powell, Mr. Thomas' immediate supervisor had given Mr. Thomas an above average performance evaluation, *Gen. Iss.* no. 25.  Ms. Camilleri was the selecting official for the positions and arbitrarily decided not to have a rating and ranking panel for the positions of Lead of Lead Support Specialist, *Gen. Iss.* no. 10, 12-15.

7

As a Career Service employee, Mr. Thomas was entitled to the reduction in force procedures of the District of Columbia government, including priority placement for vacant positions, D.C. Code § 1-608.01(12) (2001 Ed.), *Gen. Iss.* no. 1.  Ms. Smoak testified internal employees had priority over external employees, *Gen. Iss.* no. 8.  Mr. Thomas was not accorded any rights and was dismissed as an at will employee, when the statutory authority for such dismissal had expired, *Alexis, supra.*  Ms. Camilleri testified internal and external applicants were considered simultaneously for positions, *Gen. Iss.* no. 8.  Mr. Thomas was not informed of the vacancies which existed for the positions of Lead Logistics Management Specialist and Special Assistant, *Gen. Iss.* no.1,  9, 21-23.  The Lead Logistics Management position was exactly the same as the Lead Support Specialist position for which Mr. Thomas was rejected, *Gen. Iss.* no. 22.  Barbara Bryant, a Caucasian female, with no qualifying disability was selected for the position of Special Assistant, *Gen. Iss.* no. 23.   Mr. Thomas' entitlement to consideration for these positions is evidence that defendant's reasons for Mr. Thomas' rejection was a pretext for discrimination.

Defendant, also seeks to justify its decision by questioning Mr. Thomas' past work experience through the affidavits of two prior supervisors.  The affidavit of Mr. Morel is directly refuted by Mr. Thomas' affidavit, *Gen. Iss.* no. 3-4, 29.  Mr. Powell's affidavit provides no support to OCFO's assertions and is refuted by Mr. Thomas' affidavit at *Gen. Iss.* no. 5, 25.

In this case, Mr. Thomas has established a prima facie case of discrimination based upon his race, sex, and disability.  The evidence shows Mr. Thomas was a member of the protected group based upon his race, sex, and disability.  Mr. Thomas was qualified for the positions of Lead Support Specialist, Logistics Management Specialist, and the Special Assistant.  Mr. Thomas was not selected for the Lead Support Specialist positions; OCFO readvertised the

8

vacancy as a Lead Logistics Management Specialist; and advertised the Special Assistant position, for which Mr. Thomas would have qualified, *Gen. Iss.* no. 23. The facts establish a prima facie case and raise an inference of discrimination, requiring the defendant to produce a nondiscriminatory reason for its action. The OCFO relies upon subjective reasons for rejecting Mr. Thomas. The qualifications of Mr. Edmonds were not just less, but "significantly less," than the qualifications of Mr. Thomas. The Lead Logistics Management and Special Assistant positions were open and available positions for which Mr. Thomas was entitled to priority consideration and/or placement under reduction in force procedures. The OCFO's rejection of Mr. Thomas for the Lead Support Specialist positions and disregard of Mr. Thomas' rights based upon expired statutory authority raises an inference of discrimination, from which together with the prima facie case would support a finding of discrimination. The defendant's motion for partial summary judgment on this basis should be denied.

## II. A Court Should Rely On unimpeached and Uncontradicted Evidence From The Movant In Granting Summary Judgment

OCFO asserts Mr. Thomas did not apply for the positions of Lead Logistics Management Specialist and Special Assistant. OCFO's assertion is based upon its assumption that Mr. Thomas was an employee at will with no rights to continued employment in his position. Mr. Thomas was employed in a Career Service position from which he could not be terminated under District of Columbia law, without the implementation of Reduction-in-force procedures, as required by D.C. Code § 1-608.01(12). Mr. Thomas was eligible for placement in a position of the same grade for which he was qualified or a position no more than two grades lower than his position which was abolished. OCFO admits Mr. Thomas was not given any reduction-in-force

rights and was not given any priority placement rights.  OCFO relies upon an expired statutory

provision to support its assertion Mr. Thomas was not entitled to continued employment rights,

*Alexis*, *supra*.  In addition, OCFO's argument that the position of Lead Logistics Management

was never filled is not sufficient grounds on which to grant summary judgment.  Establishment

of a prima facie case requires Mr. Thomas show he was rejected and the OCFO continued

seeking applicants for a position for which he qualified.  Mr. Lister's testimony, Ms. Smoak's

testimony, and the vacancy announcement is evidence that OCFO continued seeking applicant's

for a position for Mr. Thomas was qualified, *Gen. Iss.* no. 22-23.  Had OCFO accorded Mr.

Thomas his rights, as a Career Service employee, Mr. Thomas would have qualified and been

placed in one of the positions for which OCFO sought applicants.

Mr. Thomas has established a prima facie case with respect to the positions of Lead Logistics

Management Specialist, and Special Assistant.  The defendant's motion for summary judgment

on this basis should be denied.

### III.  A Corrected Impairment and A Regarded As Impairment Is A Qualifying Disability

Mr. Thomas is a qualified individual under the ADA.  In accordance with *Sutton*, *supra*.,

correction of impairment which affects a major life activity does not exclude an individual from

coverage under the law.  Mr. Thomas has a visual impairment which requires correction through

the wearing of contact lenses and glasses.  Mr. Thomas' medical records show nystagmus,

keratoconus, and lattice degeneration, Dr. Anderson's letter speaks to Mr. Thomas' vision

impairment;  and the employer provided accommodation for his impairment with special

computer equipment, which permitted him to perform his job..  OCFO rejects the medical

records and the employer's acceptance of the position and seeks to argue Mr. Thomas has to

provide some additional evidence of his disability. OCFO was provided Mr. Thomas' medical records during discovery and sought no depositions of Mr. Thomas' physicians for detailed specific information on Mr. Thomas's vision impairment. Having failed to seek such information, OCFO cannot support its claim of no disability on its conclusory assertion that Mr. Thomas is not disabled. *Sutton* clearly states an individual is a qualified individual even with correction of an impairment and the regarded as impaired provision of the ADA, covers those individuals, whom an employer believes suffer from an impairment. Mr. Thomas meets the qualifications for a disabled individual under the law.

OCFO's assertions concerning Mr. Thomas' nonselection for the positions of Lead Support Specialist, Lead Logistics Management Specialist, and Special Assistant are equally unavailing for the reasons discussed in Section I and II, herein. Mr. Thomas has established a prima facie case by presenting evidence he is a qualified individual, he sought positions for which he was qualified; he was rejected; and OCFO continued seeking applicants for the positions. The reasons for Mr. Thomas' nonselection are not supported by unimpeached and uncontradicted evidence. The testimony of Ms. Camilleri, Ms. Smoak, and Mr. Lister are not the testimony of disinterested witnesses, upon which a grant of summary judgment may be based. The documentary evidence shows Mr. Thomas as a Career Service employee was treated as an employee at will, without any statutory authority to support such treatment. Mr. Thomas' prima facie case permits a jury to infer Mr. Thomas' qualifications were not the true reason for his rejection and that Mr. Thomas' disability was a motivating factor, in his nonselection, *Reeves, supra.*, at 146-9. Defendant's Motion for Partial Summary Judgment on this basis should be denied.

## IV. Conclusion

Mr. Thomas has submitted evidence he is a member of the protected class, based upon his race, sex, and disability; he was qualified for the positions of Lead Support Specialist, Logistics Management Specialist, and Special Assistant; was rejected; and the OCFO continued seeking applicants for the positions. Mr. Thomas has submitted evidence that the his nonselection was based upon subjective reasons and deprivation of his rights as a Career Service employee. Based upon the foregoing, material issues of fact are in dispute and Defendant's Motion for Partial Summary Judgment should be denied .

Respectfully Submitted,

/s/_____
Barbara B. Hutchinson
D.C. Bar No. 418967
7907 Powhatan Street
New Carrollton, MD. 20784
Telephone: (301) 577-3387
Facsimile: (301) 577-3764
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Walter Thomas, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1784 |
| | ) | RJL |
| | ) | |
| Natwar Ghandi, | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF WALTER THOMAS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

Plaintiff Walter Thomas, (Mr. Thomas), files this Statement of Genuine Issues in Opposition to Defendant's Statement of Material Facts in Support of Defendant's Motion for Partial Summary Judgment.[2]

1. Admit.

2. Admit.

3. Admit, Mr. Thomas was age 57; was offered a transfer to an at- will appointment on June 24, 1998; and interviewed with John Scipione (Mr. Scipione) for the position, Deny the remainder of Defendant's Statement of Material Fact no. 1. . Mr Thomas applied for a position in the Operations Division of Mission Support with the Office of the Chief Financial Officer; requested accommodation for his vision impairment during the interview; and was not requested to provide any medical documentation for his condition of nystagmus and keratoconus,. Mr. Thomas is required to wear both glasses and contact

_____

[2] Plaintiff's Statement of Genuine Issues corresponds to the numbered paragraphs in Defendant's Statement of Material Facts.

lens simultaneously, *Affidavit of Walter Thomas,* Exhibit 1, pp. 1-2, ¶ 2 ,5, and 6 attached

hereto and *Deposition of Walter Thomas*, p. 195, l. 6 to p. 197, l. 11, Exhibit 2 attached

hereto.[3]. On January 13, 2001, Mr. Thomas was transferred to a Career service position of

Support Services Specialist DS-301-13, step 6 in Department of Tax and Revenue, *aff'd,,*

p. 2, ¶ 5. Ex. 1.  As a Career Service employee Mr. Thomas was entitled to reduction-in-

force procedures, prior to his termination, after abolishment of his position, *D.C. Code* §

1-608.01(12) (2001 Ed.).

4.  Admit Stanley Morel, Caucasian male, (Mr. Morel), was Mr. Thomas's immediate

supervisor in 1998; Mr. Thomas was lead plaintiff in  a class action alleging

discrimination against black Foreign Service officers; and filed malpractice actions over

representation in the class action .  Deny the remainder of Defendant's Material Fact no.

4. Mr. Thomas performed his work as assigned and received no complaints from Mr.

Morel, about his work.   Mr. Thomas never threatened any legal action against Mr. Morel,

but filed an informal complaint with the defendant's EEO officer about Mr. Morel's

treatment of him. Mr. Thomas did not speak of his lawsuits at work and did not perform

work on his legal actions at work, *Aff'd.* ¶ 3-4, 7, Ex. 1.

5.  Denied.  In Exhibit N, ¶ 3 to *Defendant's Statement of Material Facts*, Mr. Powell

states, " In or around October 2003[sic], Mr. Huff informed me that the General Services

Unit would be responsible for handling security throughout the OCFO organization.  I . . .

suggested that Mr. Thomas be transferred into the unit from Mission Support to take over

---

[3]    The affidavit of Walter Thomas is referenced herein as "Affid.__" and the Deposition
of Walter Thomas is referenced as "Thomas___."

the security function.  Mr. Huff agreed and he requested that the transfer action be

processed."  Mr. Thomas transferred to the General Services Unit in the Department of

Tax and Revenue on January 13, 2001, Aff'd, p. 2, ¶ 5,  Ex. 1, .

6.  Admit Material Statement of Fact no 6 except that the correct title is the Office of

Government Business and Human Capital (OGBHC).  Ms. Camilleri had no experience

with the District of Columbia government and was told all positions in the OCFO were

at-will employment, *Deposition of Diane Camilleri*, p. 22, l.22 - p.27, l.12, Exhibit 3

attached hereto.[4]  Ms. Camilleri did not have supervision over the General Services Unit

(GSA), Department of Tax and Revenue and had recommended positions in GSA be

abolished and reestablished in the new Office of Management and Administration, *Id* at

p. 21, 5-14 and *December 10, 2002 Memorandum,* Exhibit 4, p. 1, ¶ 4.

7.  Admit the December 10, 2002 Memorandum abolished OGBHC and was signed by

Natwar Ghandi, Chief Financial Officer.  Deny the positions in GSA were abolished.  The

positions in GSA were reestablished in the new Office of Management and

Administration, *Id.*

8.  Admit Mr. Thomas received a letter dated December 12, 2002, which contained a

notice the vacancy announcements were available on the OCFO website and in the Office

of Human Resources; all available vacancies would be advertised for ten business days

and contained an Attachment B, with a notice that five days after the selection process

concluded, an individual not selected would be terminated  .  Deny the remainder of

Defendant's Material Fact no. 8.  The December 12, 2002 letter contained no time table

---

[4] The Deposition of Diane Camilleri is referenced herein as "Camilleri ___."

for completion of the restructuring; contained only statutory citations; contained no statement about the vacancy announcements being made available to the public; and stated employees who did not apply for a position would be terminated five (5) business days after the close of the application process , *December 12, 2002 letter*, Exhibit 5 attached hereto.  Attachment B stated "all" vacancies in OMA and OCFO would be posted; eligible  internal candidates would be automatically forwarded for an interview; and eligible external candidates would be sent to a ranking panel , Ex. 5, p. 4.  Ms. Camilleri testified employees were only given the restructuring vacancies;  she did not assure the posting of all vacancies; did not use a ranking panel for external candidates; and rated external candidate Barry Edmonds qualified based upon his resume, *Camilleri*, pp. 56, l. 8 to 22;  65, l. 6 to 66, l. 21; 97, l.13-20; 103, l.13 to 105, l. 19; 107, l. 5 to 109, l. 1; 193, l. 9 to 195, l. 17, Ex. 3.  Jo Ann Smoak, Executive Director of OMA testified she insisted eligible internal employees have first rights to positions and external applicants be interviewed only after a determination existing employees were not competent or qualified, *Deposition of Jo Ann Smoak ,* p. 113, l. 20 to 117, l. 7, Exhibit 6 hereto.[5]   Ms. Camilleri testified internal and external candidates were considered simultaneously for positions, *Camilleri*, p. 70, l. 18 to 71, l. 9, Ex. 3 .

9.  Admit the notice letter contained no information on future vacancies in OCFO. Attachment B stated employees would be notified of all vacancies in the new organization and in OCFO during the restructuring, Ex. 5,  p. 4.

9. [sic] Admit Mr. Thomas responded to Vacancy Announcement AD-RS-MA017.

---

[5] The Deposition of Jo Ann Smoak is referenced herein as "Smoak__."

16

Vacancy Announcement AD-RS-MA-034, Lead Logistics Management Specialist DS-346-11 and Vacancy Announcement AD-RS-MA-033, Special Assistant to the Director, MSS-346-13 were not announced nor was Mr. Thomas informed the positions were available prior to his March 28, 2003 termination, *Aff'd.* ¶ 8-9, Ex. 1.  Mr. Lister testified the decision had been made to advertise and fill the positions after he began employment on March 10, 2003 and prior to March 31, 2003, *Deposition of Alphonso Lister*, p.94, l.6-97, l.8, Exhibit 7 hereto.[6]

10.  Denied.  Application packages exist, for, Walter Thomas, internal candidate, Barry Edmonds and Herbert Allen, external candidates, *Resume of Walter Thomas, Resume of Barry Edmonds, and Application of Herbert Allen* Exhibit 8 attached hereto..  Ms. Camilleri testified application packages existed for each candidate and individuals who submitted applications were interviewed, *Camilleri* p. 95, l. 6 to 96, l. 10.; 97, l.13 to 98, l.6, 99, l. 18-100, l.15; 180, l.14 to 182, l. 21, Ex. 3. Ms. Camilleri decided not to rank external candidates, *Id.* p. 193, l. 3 to 195, l. 17.  Mr. Lister could not recall any internal candidates, other than Mr. Thomas, *Lister*, p. 34, l. 9 to 35, l. 3, Ex. 7.  Barry Edmonds, an African-American male, age 41 was selected for the position, *March 21, 2003 DS-2 Form Request for Personnel Action,* Exhibit 9 attached  hereto.

11.  Denied.  Mr. Thomas' resume showed fourteen years as a Foreign Service Officer managing Embassy resources; seven years employed with the federal government and the District of Columbia government; two years as an Operations Specialist with the D.C. Public Schools; and seven years as a Support Services Specialist with the OCFO, *Resume*

---

[6]  The deposition of Alphonso Lister is referenced herein as "Lister__."

*of Walter Thomas,* Ex. 8.  Barry Edmonds began employment with the D.C. City Council in 1981 as a Support Services Clerk DS-303-4 in November 1981 ; from October 27, 1987 to November 21, 1988 was employed as a Support Services Clerk DS-303-6 and Administrative Assistant DS-301-7to the  D.C. Council;    from 1989 to 2001  was a Delivery Supervisor for the Wall Street Journal; and had no experience in real estate management, a required ranking factor, *Resume of Barry Edmonds,* Ex. 8,  *October 14, 1987 SF-171 Employment Application of Barry Edmonds*, Exhibit 10 attached hereto; *DS-1 Form Personnel Actions effective 10/27/87, 5/16/88, and 11/22/88* Exhibit 11 attached hereto; and *5/6/03 Employment Reference Inquiry*, Exhibit 12 attached hereto.

12.  Admit  Mr. Thomas was interviewed on March 12, 2003 by a three member panel consisting of Ms. Smoak, Ms. Camilleri, and Al Lister.  Only one internal candidate applied for the position,  *See Plaintiff's Response to Statement of Material Fact no.* 11. Deny the remainder of Defendant's Material Fact no. 12..  Ms. Smoak testified the reorganization began before she arrived ; Ms. Camilleri had been brought in to manage the process; and she had no opposition to changes or recommendations of Ms. Camilleri, *Smoak,* p. 41, l. 7 to 42, l.3, Ex. 6.   Ms. Camilleri was the individual in charge of the reorganization and the establishment and abolishment of positions, *Id*, p. 66, l. 18 to 67, l. 10.

13. Denied.  Ms. Smoak received the applications the day of the interview and did no rating or ranking of candidates before the interview, *Smoak*, p. 86, l. 17 to 88, l. 3, Ex. 6. Ms. Smoak did not recall the length of the interviews, *Id*, p. 112, l. 22 to 113, l. 8.  Mr. Lister testified the application package was in the room when he went to the interview,

*Lister*, p. 113, l. 7-13, Ex. 7.  Mr. Thomas testified the interview lasted twenty to twenty-five minutes,  *Thomas*, p. 252, l. 4-6, Ex. 2.

14.  Admit the interview form contained seven categories of questions.  Deny Ms. Camilleri arranged to have the forms totaled.  Ms. Smoak testified the process was that Ms. Camilleri totaled the numbers, after the interview; someone made a decision not to select Mr. Thomas; and external candidates were interviewed after the decision was made not to select Mr. Thomas, *Smoak*, p. 125, l.15 to 127, l.6, Ex. 6.

15.  Admit Ms. Smoak gave Mr. Thomas the lowest score and Camilleri and Lister's scores were higher.  Deny the remainder of Defendant's Material Fact No. 15.  Ms. Smoak testified she did not recall Mr. Thomas' answers to questions; made no notations of her impressions; and it was her impression Mr. Thomas had retired in place, *Smoak*, p. 164, 1.4-5; 202, l. 15 to 205, l. 4, Ex. 6.. Mr. Lister testified he gave Mr. Thomas good scores for the interview, *Lister*, p. 134, l. 19 to 135, l. 19, Ex. 7.  Ms. Camilleri reviewed her notes on Mr. Thomas' interview sheet stating Mr. Thomas detailed his experience, , gave his definition of customer service citing an example of his skills; and responded in a satisfactory manner to the panel's questions, *Camilleri* p. 125, l. 9 to 132, l.20;  135, l. 7 to 136, l. 2; and 141, l. 3 to 148, l. 3, Ex. 3.

16. Admit.

17.  Admit Ms. Smoak had a favorable impression of Mr. Edmonds;  his dress; and his response of wanting the job.  Admit Ms. Camilleri believed Mr. Edmonds was the best candidate because of the interview.  Admit Mr. Lister believed Mr. Edmonds outperformed Mr. Thomas in the interview.  Deny the remainder of Material Fact No. 17.

Mr. Edmonds had no work experience with The Washington Post, *Resume of Barry Edmonds* Ex. 8.  Mr. Lister gave Mr. Thomas an overall interview score of twenty  and Mr. Edmonds an overall score of 22, *Lister*, p.  82, l. 3-5; 105, l. 7 to 106, l. 1, Ex. 7.  Mr. Lister testified Mr. Thomas and Alton Hartwell, internal employees, l were dressed in a shirts and slacks for their interviews, *Id.*  33, l. 11 to 34, l.8; 76, l. 6-20.

18.  Local Rule 7(h) requires a statement of material fact be supported with citation to the record.  Mr. Thomas objects to Defendant's Statement of Material Fact no. 18, as having no citation to the record and being incapable of admission or denial.

19.  Local Rule 7(h) requires a statement of material fact be supported with citation to the record.  Mr. Thomas objects to Defendant's Statement of Material Fact no. 19, as having no citation to the record and being incapable of admission or denial.

20.  Local Rule 7(h) requires a statement of material fact be supported with citation to the record.  Mr. Thomas objects to Defendant's Statement of Material Fact no. 20  as having no citation to the record and being incapable of admission or denial

21.  Admit Mr. Thomas met with Ms. Camilleri on March 28, 2003; the letter contained statutory citations;  and Mr. Thomas was terminated immediately.  Deny the remainder of Defendant's Material Fact no. 21.  Ms. Camilleri told Mr. Thomas he was not selected for either of the Lead Support Specialist positions; did not inform him of any other vacancies available; and informed him he had to leave the building within the hour, *Thomas*, p. 301, l. 19 to 312, l. 11, Ex. 2.

22.  Admit Mr. Lister changed the job series of the position of Lead Support Specialist; had more than 25 years experience in logistics; and Ms. Camilleri and Ms. Smoak

believed he needed a deputy.  Mr. Lister testified he had assessed his organization, prepared vacancy announcements, and completed the review to announce the positions by March 31, 2003, *Lister* 87, l. 1 to 97, l. 8, Ex. 7.  Ms. Smoak testified the duties of the Lead Logistics Management Specialist DS-346-11 was the same as the Lead Support Specialist DS-342-11, *Smoak*, p. 99, l. 12 to 101, l. 13, Ex. 6.

23.  Admit Ms. Camilleri posted vacancy announcements for the positions of Lead Logistic Management Specialist and Special Assistant on April 3, 2003; the Special Assistant position was filled by Barbara Bryant; and Mr. Thomas did not apply for the positions.  Deny the positions required experience in the 346 series.  The vacancy announcement required one year of specialized experience at a level of difficulty and responsibility comparable to the next lower grade or an equivalent of experience and education, *Vacancy Announcement No. AD-RS-MA-034 and Vacancy Announcement No. AD-RS-MA-033*, Exhibit 13 attached hereto.

24.  Admit Mr. Thomas filed a charge of discrimination on August 20, 2003, alleging age, race, disability, and gender discrimination for two positions of Lead Support Specialist. Deny the remainder of Material Fact no. 24.  Mr. Thomas told the EEOC Investigator about the comment of Mr. Lister, *Aff'd*, p. 3,  ¶ 10, Ex.1 .

25.  Admit Mr. Thomas submitted the performance evaluation completed by Albert Powell to the EEOC and Mr. Powell was terminated from the OCFO on March 5, 2003. Deny the remainder of Defendant's Material Fact no. 25.  Mr. Thomas did not fill out page 1 of the performance evaluation and has no knowledge of why the information shows his employment as employment at will.  Mr. Powell executed the performance

evaluation and gave Mr. Thomas a September 5, 2005 letter of reference which confirms the performance evaluation rating. *Aff'd.*, p. 2, ¶ 7, Ex. 1.

26.  Admit the EEOC issued a November 3, 2003 notice to Mr. Thomas.  Mr. Thomas protested the EEOC's Notice of Intent to Dismiss his charge of discrimination, *Aff'd* .p. 3, ¶ 11, Ex. 1.

27 Admit.

28.  Admit the U. S. Department of Justice issued a Notice of Right to Sue dated June 2, 2005 and the EEOC issued a Notice of Right to Sue dated June 7, 2005.  The U.S. Department of Justice Notice of Right to Sue was received on June 16, 2005 by Mr. Thomas' attorney and the EEOC Notice of Right to Sue was sent to Mr. Thomas by regular mail, *Aff'd.* p. 3, ¶ 12, Ex. 1  and *Affidavit of Barbara B. Hutchinson with June 3, 2005 Postmarked Envelope U.S. Department of Justice*, Exhibit 14 attached hereto.

29.  Admit Mr. Thomas provided the EEOC with the Mary 24, 2001 letter of Dr. Felton Anderson.  Deny the remainder of Defendant's Statement of Material Fact 29.  The OCFO was aware of Mr. Thomas's vision impairment.  In June 2001, Mr. Thomas filed an informal complaint with the OCFO's EEO Office and Mr. Stanley Morel (Mr. Morel) admitted special equipment had been provided to accommodate Mr. Thomas' vision impairment, *Aff'd*, p. 1, ¶ 3 and p. 2, ¶ 6, Ex. 1.

30.  Admit Mr. Thomas' application package contains no statement on his vision impairment; his impairment is not listed on the interview notes; and Ms. Smoak says she did not observe his vision impairment during the interview.  Deny the remainder of Material Fact no. 30.  Mr. Thomas' complaint has not reference to a wandering eye,

*Complaint* ¶ 14-23. Ms. Camilleri requested to look at Mr. Thomas, at her deposition, stated she could she one eye was closed a little bit more than the other, *Camilleri,* p. 253, l. 9 to 21, Ex. 3.

31.  Denied.  Mr. Thomas produced his medical records which contained a diagnosis of a 62 year old male with a history of keratoconus, nystagmus, and lattice degeneration, *Aff'd,* p. 2, ¶ 6, Ex. 1.

Respectfully Submitted,

/s/_____
Barbara B. Hutchinson
D.C. Bar No. 418967
7907 Powhatan Street
New Carrollton, MD. 20784
Telephone: (301) 577-3387
Facsimile: (301) 577-3764
Attorney for Plaintiff