IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Walter Thomas, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1784 RJL |
| | ) | |
| Natwar Gandhi, | ) | |
| Office of the Chief Financial | ) | |
| Officer | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSTION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

On April 2, 2007, Defendant Natwar Gandhi, in his official capacity as chief executive of the District of Columbia Office of the Chief Financial Officer ("OCFO"), filed a motion for partial summary judgment seeking to dispose of all claims asserted by Plaintiff Walter Thomas in this Title VII, DCHRA, and ADEA non-selection case, except for the claim of age discrimination alleged with respect to Thomas's non-selection for the position of Lead Support Services Specialist ("LSSS"), DC-342-11.[1]  Thomas competed for the LSSS position after his position, Support Services Specialist, DC-301-13, was abolished in December 2002 when the OCFO restructured and consolidated support and logistics functions into a new department, the Office of Management Administration ("OMA").  Interviews for the LSSS position were conducted between March 10 and 17, 2003.  The candidate who received the highest ratings from the three-member interview panel, Barry Edmonds, was selected for the position.  Thomas was terminated on March 28, 2003, based upon his failure to find a replacement position.

---

[1] Due to disputes of fact with respect to the existence of direct evidence of age bias in the LSSS selection process, summary judgment as to that claim is unavailable.

Although the LSSS position was the only position for which Thomas applied, he is also suing herein based upon his non-selection for two other OMA positions that became available and were posted after the date of his termination, i.e., Special Assistant to the Director of Logistics, MSS-346-13 ("SAD"), and Lead Logistics Management Specialist DC-346-11 ("LLMS"). The LLMS vacancy announcement was subsequently cancelled, no interviews were conducted with respect thereto, and the position was never re-advertised.

Defendant's legal analysis in favor of partial summary judgment follows the familiar structure of the *McDonnell Douglas* shifting burdens standard. Plainly stated, Defendant contends that Thomas cannot make out a *prima facie* case as to any of the four alleged grounds of discrimination with respect to the SAD and LLMS positions because he did not apply for either. Additionally, he cannot meet the fourth prong of the *prima facie* case for the LLMS position because the vacancy announcement was withdrawn and the position was never filled.[2] Defendant further contends that because Thomas has failed to make the record that he is disabled within the meaning of the ADA and DCHRA, he cannot meet his *prima facie* burden on any of his disability claims.[3] Beyond the *prima facie* phase, Defendant contends that it has met its burden of articulating a legitimate, non-discriminatory reason for selecting Edmonds for the LSSS position based upon his superior ratings in the interview process – a process which provided Thomas with an equal opportunity to articulate his background experience and qualifications for

---

[2] *See* Def. Mem. at 9-10 and fn 6.

[3] In reviewing its Memorandum for this Reply, Defendant noted that a portion of its argument dealing with the ADA proof requirements was erroneously not included in the original filing. An *Errata* filing has been made, providing a corrected copy of the text, beginning at page 18 of the brief.

the job, and that ultimately Thomas can point to no evidence that the stated reason is false or that would otherwise raise an inference of pretext.[4]

On April 23, 2007, Thomas filed an Opposition Memorandum, which largely obfuscates the material facts and misstates or misapplies controlling law. For purposes of analysis, Thomas does not contest the applicability of the *McDonnell Douglas* standard to any claim with respect to which Defendant seeks partial summary judgment.[5] Although Thomas concedes that he failed to apply for either the SAD or LLMS positions, and that the LLMS vacancy announcement was cancelled and the position never filled,[6] Thomas contends, nevertheless, that he is still able to meet the *prima facie* requirements. Thomas further contends that he has met his *prima facie* burden with respect to proof of disability, including satisfaction of the "regarded as" standard. Finally, Thomas argues that Defendant's articulated reasons for selecting Edmonds for the LSSS position are pretextual. This Reply addresses each of Thomas's contentions and explains why, as a matter of law, they are inadequate to preserve any of the claims covered by Defendant's motion for partial summary judgment.

---

[4] *See* Def. Mem. at 10-16, 20-21.

[5] In his Statement of Genuine Facts, Thomas refused to admit or deny the fact that there is no direct evidence as to race, gender or disability discrimination in the record, contending he is not obliged to do so because of Defendant's failure to cite to any portion of the record supporting an absence of "direct evidence." *See* Def. LCvR 7(h) Statement, ¶¶ 18-20 and compare Thomas's Statement of Genuine Issues, ¶¶ 18-20. Thomas's contention is ridiculous inasmuch as one cannot prove a negative by reference to the record. If Thomas contends direct evidence exists as to these claims of discrimination, he has the burden to come forward and identify it, and he has failed to do.

[6] *See* Opp. at 2 and ¶ 9, St. of Genuine Issues.

1. **Thomas Has No Legal Justification For Why His Failure To Satisfy The Application And Availability Prongs Of The *Prima Facie* Case Should Be Excused As Relates To His SAD And LLMS Non-Selection Claims.**

Buried within Thomas's Opposition papers are four reasons why he should be excused from satisfying the application prong of the *prima facie* case on any of the discrimination grounds he asserts with respect to the SAD and LLMS vacancies:

First, he asserts he didn't know about the vacancies until it was too late.[7] However, he cites no legal authority for forgiving a failure to apply under such circumstances, and there is none.

Second, Thomas asserts he was entitled to personal notice of both vacancies, not just the public posting notice which he concedes was made. He sources his claim to personal notice in the description of the job application procedures set forth in Attachment B to the December 12, 2002 letter of H.R. Director Diane Camilleri announcing the restructuring and consolidation of OCFO support service functions within the newly created Office of Management Administration.[8] Significantly, Thomas fails to identify any language in Attachment B supporting his claim, and examination of the document (which speaks for itself) establishes that Thomas's claim is groundless.[9]

Third, Thomas speculates that Defendant's Human Resource Director, Diane Camilleri, knew about the forthcoming announcements of the SAD and LLMS vacancies when she delivered his termination notice on March 28, 2003.[10] Defendant denies that the record supports Thomas's contention on this point; however, that dispute is non-

---

[7] Opp. at 8.

[8] Opp. at 2, referencing Gen. Iss. Nos. 8-9.

[9] *See* Thomas Exh. 5.

[10] Opp. at 3-4, referencing Gen. Iss. Nos. 21-22.

material because there is no evidence to support his claim that he should have received personal notice, as opposed to public notice, of the SAD and LLMS vacancies. Again, because the position was publicly posted, Thomas received all the notice to which he was entitled.

Fourth, Thomas appears to contend that he should be deemed to have applied for the SAD and LLMS positions, allegedly because the duties of the LLMS position were the same as those of the LSSS position for which he had applied and been rejected. Contrary to Thomas's assertion, the testimony of OMA Director Joanne does not support his claim that the LLMS and LSSS positions were the same job. At deposition, Smoak was asked to compare the duties listed on the face of the vacancy announcement for the LLMS and LSSS positions, and she admitted there was "no material difference." However, the vacancy announcements are broad, general statements of the job, and do not contain detailed job descriptions. Thomas fails to inform the Court that Smoak also testified that she approved the creation of two new logistics specialists positions in April 2003, after discussions with Camilleri regarding new Logistic Director Al Lister's desire for candidates with more highly specialized logistics skills.[11]

However, even if the classification and requirements of the LSSS and LLMS positions were identical in all respects, that fact would not allow Thomas to make out a *prima facie* case as to his non-selection for the LLMS position because the position was withdrawn from recruitment and the position was never filled – facts Thomas does not

---

[11] The referenced portions of Smoak's deposition testimony are found at pp. 101:7-105:21 of the transcript, copies of which were previously produced under Exh. C of Def. LCvR 7(h) St. Lister's testimony corroborates Smoak's statement; he testified at length regarding his justification for canceling one of the two Series 342 LSSS positions advertised in December 2002 (the positions for which Thomas applied), and for requesting that new recruitment be undertaken for Series 346 logistics specialists (under which Series both the SAD and LLMS positions were classified and advertised). *See* Def. LCvR 7(h) St. ¶ 22.

dispute. Although Thomas argues that the cancellation and withdrawal of the LLMS position is immaterial to his *prima facie* case, he cites no legal authority for this proposition.[12] Indeed, all legal authority is to the contrary.[13]

Accordingly, Defendant is entitled to dismissal of all discrimination claims asserted with respect to the SAD and LLMS positions based upon Thomas's failure and inability to satisfy the *McDonnell Douglas prima facie* elements.

### 2. Thomas Has Failed To Demonstrate That He Is A Disabled Individual Within The Meaning Of The ADA And The DC Human Rights Act.[14]

In its original brief, Defendant urged that Thomas's claims under Count II (for disability discrimination) should be dismissed because he has failed to produce proof that he was either "disabled" or "regarded as" disabled as of the time of the non-selection decision in March 2003. In this regard, Defendant relies upon the Supreme Court's decision in *Bragdon v. Abbott*, 524 U.S. 624, 630-31 (1998) and its progeny, *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999), *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Mfg. Ky., Inc. v. Williams,* 534 U.S. 184 (2002), all of which place the burden on the plaintiff to meet all the requisite elements of the definition of disability contained in the ADA.

---

[12] Opp. at 5, 10. At page 5 of the Opposition, Thomas cites *Stella v. Mineta*, 248 F.3d 135, 145-6 (D.C. Cir. 2002)(the decision is actually found at 284 F.3d 135 (D.C. Cir. 2002) in support of the proposition that cancellation of LLMS recruitment process does not foreclose his selection claim with respect to that position. The decision contains no such holding. In *Stella* the Court of Appeals recognized that selection of individuals of the same protected class as plaintiff does not defeat a promotion claim at the *prima facie* stage. Although Defendant acknowledged this point in its original memorandum (Def. Mem. at 10, fn 7), Thomas nevertheless argued this non-issue prominently in his Opposition (Opp. at 6).

[13] Def. Mem. at 9. Additionally, *see Henderson v. Rice*, 407 F. Supp. 2d 47, 51 (D.D.C. 2005).

[14] Thomas does not contest the fact that the District of Columbia Court of Appeals interprets the disability provisions of the DCHRA in a manner consistent with the requirements of the ADA, as interpreted by the federal courts. *See* Def. Mem. fn 9.

In his Opposition, Thomas contends that he has satisfied his burden merely by alleging that he suffers from nystagmus and keratoconus, and because OCFO officials other than those involved in the disputed selection decisions knew about his vision problems and provided him with an enlarged computer screen and special lighting to enable him to work on a computer. Thomas misreads controlling law. As articulated in *Albertson's*, *Sutton*[15] and *Toyota Motor Mfg.*, in order to survive summary judgment on an a ADA claim a plaintiff is required to adduce proof that an alleged visual impairment imposed "a substantial limitation" or that plaintiff was significantly restricted as compared with the average person in the general population as of the date he claims to have been denied selection based on disability. *Accord: EEOC v. United Parcel Serv., Inc.*, 306 F.3d 794, 802-803 (9th Cir. 2002)(relying upon the foregoing trilogy of Supreme Court decisions and holding that the monocular vision claimants before the court were not disabled within the meaning of the ADA due to lack of proof that claimants were substantially limited in their daily activities).

Thomas has made no effort to produce such proof. His reliance upon the medical records appended to his Rule 56(e) affidavit do not suffice because they relate to treatment for an injury to Thomas's left eye received in a vehicular accident that occurred more than four months after he was considered and rejected for the LSSS position. Moreover, the records don't address the critical question of whether Thomas's total visual impairment during the relevant time period substantially limited his participation

---

[15] Thomas is also in error in his assertion that *Sutton* stands for the proposition that the use of corrective contacts and lenses actually establishes that he is disabled within the meaning of the ADA. Opp. at 10-11. To the contrary, *Sutton* holds that the severity of an alleged impairment must be judged by the functionality of the plaintiff considering the ameliorative effect of mitigating measures such as prescription lenses.

in a broad range of daily activities as required under Supreme Court precedent.[16] Likewise, the May 2001 letter of Thomas's physician, Dr. Felton Anderson, to former OCFO Mission Support Director Louis Parker, is insufficient to establish that Thomas suffered from a significantly disabling visual impairment in the period prior to his non-selection. To the contrary, the Felton letter gives rise to the inference that mitigating measures such as an enlarged computer screen and special lighting were sufficient to enable Thomas to be fully functional at work, and that Thomas's vision impairment was not substantially limiting.[17]

On the other hand, there is evidence of record, provided by Thomas himself, contradicting his claim that his vision was severely impaired prior to July 2003. In response to Defendant's request for admissions, Thomas acknowledged testifying under oath on December 15, 2005 (in his Virginia motor tort suit) that "other than going to get his glasses changed," he had no problems with his eyes prior to July of 2003."[18] The foregoing admission, coupled with the lack of positive proof that Thomas suffered from substantially limiting vision impairment at the time of the disputed selection process, entitles Defendant to summary judgment as to all of Thomas's claims under Count II of

---

[16] Thomas Exh. 1-C consists of a letter from Dr. Mark Johnson of the National Retina Institute to a Dr. Salim, dated April 27, 2006, addressing treatment to Thomas's left eye for a detached retina, secondary to a vehicular accident that occurred in July 2003 – several months after he was rejected for the only position for which he applied – the LSSS position. The exhibit contains no medical evidence of a substantial vision impairment in both eyes prior to July 2003, and fails to address the issue of Thomas's overall visual acuity with corrective lenses.

[17] In response to Defendant's argument that Thomas failed to produce qualifying medical documentation of his claimed disability, Thomas faults Defendant for failing to depose Thomas's physician. However, the law places the burden upon the plaintiff seeking ADA protection to come forth with the qualifying proof of disability. In an effort to determine whether such proof existed, Defendant requested copies of his medical records for the time period prior to the disputed selection decisions, particularly the records of his treating physician, Dr. Felton Anderson. Thomas does not dispute that he failed to produce any records other than those created after his injury in a July 2003 vehicular accident.

[18] *See* Plaintiff's Answer to Req. Nos. 6 and 10 of Defendant's First Request for Admissions, marked as Def. Exh. P, attached to this Reply.

the complaint that he was "disabled" under Prong A of the ADA definition of disability, which also defeats Thomas's parallel claim under the DCHRA.

Likewise, Thomas has failed to establish a claim of disability under the "regarded as" theory. Significantly, he does not dispute that the selecting officials - Camilleri, Lister and Smoak – did not perceive him to be disabled. Thomas nevertheless argues that because others within Defendant's organization accepted Thomas's stated need for a large screen computer and special lighting, that acceptance is sufficient to render him "regarded as" disabled.[19] Thomas again is in error on the law. Under *Murphy v. United Parcel Serv.*, Inc., 527 U.S. 656 (1999) and its progeny, Thomas is required to build a record that his condition as of the non-selection period at issue disqualified him from performing a broad range of jobs in order to satisfy the ADA "regarded as" standard.[20] Because there is no such evidence in this record, Thomas's "regarded as" claim must fail.

3. **Thomas Has Failed To Identify Any Evidence Sufficient To Create A Jury Question On The Issue Of Pretext.**

Because Defendant has articulated a legitimate, non-discriminatory reason for making the disputed selection decisions, Thomas must prove by a preponderance of the evidence that the proffered reasons were not the true reasons for the actions, but merely a pretext for discrimination. *Barnette v. Chertoff*, 453 F.3d 513, 526 (D.C. Cir. 2006), quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Thomas has failed to identify any evidence of record that is legally sufficient to raise an inference of pretext in order to avoid summary judgment.

---

[19] Opp. at 3.

[20] Def. Mem. at 20-21.

Preliminarily, Thomas asserts that Defendant's failure to accord him priority selection rights after his OCFO position was abolished violated his rights as a Career Service employee of the District of Columbia under D.C. Code § 1-608.01(12)(2001 Ed.).[21] In this regard, Thomas also relies upon footnote 9 of the district court's decision in *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 343 n.9 (D.C. Cir. 1999), as a basis for his claim that the CFO's at-will authority had expired as of the date of the decisions challenged in this case. Yet footnote 9 merely recites the text of ¶ 152 of the 1996 District of Columbia Appropriations Act, which provided Defendant with the legal authority to terminate the Alexis plaintiffs without notice and hearing or the other "due process" requirements of the District of Columbia Merit Personnel Act. Although the CFO's at-will authority was initially set to expire at the expiration of the Control Period established under P.L. 104-8, Congress extended it in subsequent legislation, which was in place at the time of the December 2002 reorganization and throughout the period

---

[21] Opp. at 8. The factual basis for Thomas's claim that he was a Career Service and not an at-will employee during the relevant time period rests upon the designation of his position as "Career Service" in box 37 of DS-1 Personnel Action Form documenting the transfer of his position from the OCFO Office of Executive Direction and Support to the OCFO Office of Tax and Revenue, effective 01/11/02. *See* Opp., Exh. 1-B. It would be improper to interpret this designation as an admission that Thomas was viewed as other than an at-will employee of the CFO at the time of the transfer. Indeed, the authority for the transfer is stated to be "P.L. 104-194 OCFO Office," at box 11 of the form, consistent with comments in the Remarks section of the form that the transfer was effected "pursuant to the authority of the CFO" (referencing an attached authority statement that has not been produced by Thomas).

Completely as an aside, a non-material dispute of fact exists with respect to the date of Thomas's transfer to OTR, presumably based upon the failure to correctly note the change-in-year when Exh. 1-B was prepared in January 2002, as reflected in the date of preparation at the top and bottom of the form. Apparently based on this error, Thomas contends his OTR transfer occurred on January 1, 2001, even though that date is inconsistent with the reported effective date of 1/11/02 (Item 3), and the 1/15/02 signature date of the agency control designee (item 28). The January 2001 transfer date is also inconsistent with the date of Thomas's grievance against his then-supervisor, Stan Morel, prior to the date of his transfer to OTR (i.e., July 5, 2001). In its motion papers, Defendant also erred in reporting the date of the transfer as on or about October 1, 2003, referencing a typographical error contained in the affidavit of Thomas's OTR supervisor, Al Powell. Powell left the CFO's employ on March 5, 2003. Thomas left on March 28, 2003. In an effort to correct the record, Defendant is submitting a Supplemental Affidavit from Mr. Powell correcting his earlier mistake. *See* Def. Exh. O-1 attached hereto.

covered by this lawsuit.[22] Even were that not the case, there is no evidence that the selecting officials believed Thomas to be entitled to Civil Service priority placement rights as they reviewed the candidates' qualifications.[23] Without proof of such knowledge, it cannot be said that their failure to accord him preferential selection gives rise to an issue of pretext. Finally, the time has long since passed for Thomas to assert a claim for denial of Career Service priority consideration rights, an issue within the exclusive jurisdiction of the D.C. Office of Employee Appeals ("OEA").[24] Thomas's failure to bring a timely OEA administrative claim forecloses him from trying to raise the issue now as a pretext claim.

Thomas otherwise advances a hodgepodge of reasons for rejecting Defendant's claim that Edmonds was selected because Edmonds persuaded all members of the rating panel that he was better qualified for the LSSS position than Thomas based on what he said and how he presented himself. First, Thomas claims that the reasons for judging Edmonds to be the better candidate are "subjective" in nature and therefore evidence of

---

[22] Section 409 of the 2002 Supplemental Appropriations Act for Further Recovery From and Response to Terrorist Attacks on the United States, P.L. 107-206 (Aug. 2, 2002), authorized continuation of the CFO's at-will personnel authority as it existed during a control period through July 1, 2003, or until such time as the District of Columbia Fiscal Integrity Act ("DCFIA") becomes effective, whichever is sooner. The DCFIA was never enacted. Section 409 covers the relevant time period in this case. A copy of the legislation is appended to this Reply as Def. Exh. R.

[23] Camilleri testified that she relied on the advice of counsel that the CFO possessed at-will authority at the time of the disputed actions. *See, e.g.*, Thomas Exh. 3(Camilleri Depo. Tr., 26:2-29:5). Thomas points out that another selecting official, Smoak, understood the selection process to require that incumbent applicants be considered and rejected before selecting an external candidate. However, it is apparent that Smoak would not have selected Thomas for the LSSS position based upon her assessment of his performance at interview. *See* Def. LCvR7(h) St. ¶ 15, and the citations to the record referenced therein. Camilleri testified that the selection process she designed required only that internal candidates be interviewed before external candidates, but that internal candidates were given no other preference. Thomas Exh. 3, 71:4-9.

[24] D.C. Code § 1-624.04 requires an employee to file an appeal no later than 30 calendar days after the effective date of the action with the Office of Employee Appeals if he or she believes that his or her agency has incorrectly applied the provisions of the subchapter dealing with reductions in force, or the rules and regulations issued pursuant thereto. Thomas never filed such an appeal.

pretext.[25] However, he cites no authority for the proposition that an employer is barred from using subjective criteria in the selection process where such criteria are tied to the requirements of the position. To the contrary, it is well established that such evidence is admissible and has proved highly persuasive in justifying challenged employer selection decisions. *See Barnette v. Chertoff*, 453 F.3d 513, 516-519 (D.C. Cir. 2006)(approving the judgments that the selectee's front line operational experience would be more valuable than plaintiff-applicant's lengthier supervisory experience); *Judge v. Marsh*, 649 F. Supp. 770, 782 (D.D.C. 1986)(approving the use of subjective criteria supported by the selectors' objective assessment of what personal and professional qualities would best meet the needs of the employer); *Chapman v. AI Transp.*, 229 F.3d 1012, 1033 (11th Cir. 2000)(quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 991 (1988), "[a] subjective can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas/Burdine"* shifting burdens analysis); *Clifford v. Barnhart*, 449 F.3d 276, 282-284 (1st Cir. 2006)(same).

In an attempt to bring his case under *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998), Thomas contends that his work experience was "significantly superior" to that of Edmonds.[26] His contention is not supported by the record. Edmonds possessed substantive logistics experience gained in the mailroom at the D.C. Council and in management of the distribution functions for two major D.C. newspapers totaling more than 21 years-experience which Smoak rated as highly indicative of future success

---

[25] Although Thomas asserts that Smoak, Camilleri and Lister are "interested witnesses" and their testimony is not admissible in summary judgment proceedings, Thomas has identified no evidence to support a claim of bias or self-interest on their part. His assertion is therefore without merit.

[26] Opp. at 7.

in the LSSS position.[27] While Thomas claims to have had 30 years' work experience, his total includes nine years' non-substantive experience in investigating non-payment of federal education loans, working with immigrants on resettlement issues, and coordinating of bilingual education in the D.C. Public Schools.[28] In overall years of relevant experience, Thomas and Edmonds were relatively equal, rendering this a very different case from *Aka* where the plaintiff-applicant for a pharmacy position had a business administration degree and 19 years of non-substantive experience in the hiring pharmacy versus the selectee who had no degree and two months' non-substantive experience in another pharmacy.

Perhaps most significantly, Thomas has produced no legal precedent supporting a finding of pretext under circumstances similar to those presented herein where the plaintiff-applicant and the selectee were both members of the same race and gender group (African-American/male). While same-sex/same-gender factors may not be sufficient to defeat plaintiff's case at the *prima facie* stage, they are highly persuasive factors in evaluating whether Thomas has satisfied his pretext burden after the Defendant has articulated legitimate, non-discriminatory reasons for the disputed action. Further, while

---

[27] Edmonds' application package, consisting of his cover letter and resume, are found behind Def. Exh. C (Excerpts of Camilleri Depo.) and marked as Camilleri Depo., Exh. 14. To better facilitate comparison of the paper qualifications of Thomas and Edmonds, Edmonds' cover letter and resume are attached to this Reply and marked as Def. Exh. Q. Thomas faults Defendant's failure to investigate the experience claimed in Edmonds' resume before offering him the position. Opp. at 7. However, Camilleri testified that reference checks were not conducted until after an offer of employment had been made (Thomas Exh. 3 [Camilleri Depo. Excerpts], 197:2-21) and Thomas has offered no evidence contradicting her testimony. There is also no evidence that Defendant's Internal Investigations Unit reported any misrepresentations as a result of Edmonds' background check (Def. Supp. Exh. C [Camilleri Depo. Excerpts], 237:17-238:18, attached hereto).

[28] There are discrepancies between Thomas's employment history as reported on his resume (Thomas Exh. 8) and his testimony at deposition, particularly with respect to his employment with the U.S. Department of Education and Fed. Capital, Inc. (Thomas Depo. Tr., 104:9-115:19, produced herewith as a supplement to Def. Exh. B), raising serious doubt as to his claim of 30 years' substantive experience in the logistics field.

it may be true that Edmonds made no claim of disability at the time of application, Thomas admits that he didn't raise the disability issue either at his interview. Since Defendant's stated reasons for selecting Edmonds are totally unrelated to a perceived superior visual acuity, Thomas has also failed to raise an inference of pretext with respect to disability discrimination.

## Conclusion

Defendant respectfully submits, based on the overall record and controlling law, that it is entitled to partial summary judgment as to all claims asserted under Count I of the complaint other than Thomas's claim for age discrimination in connection with the LSSS selection, and as to all claims under Count II of the complaint.

DATED: May 10, 2007

Respectfully submitted,

_____
Mary E. Pivec, Esq. D.C. Bar No. 445760
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, DC 20001
(202) 434-4212(phone)/(202) 434-4646(fax)
Counsel for Defendant

CERTIFICATE OF SERVICE

On this the 10th day of May 2007, I, the undersigned, certify that I caused a copy of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment to be served upon Barbara Hutchinson, counsel for Plaintiff Walter Thomas.

_____
Mary E. Pivec, Esq.
Counsel for Defendant