```
                                                      FILED
       UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF COLUMBIA              NOV 3 0 2007
```

**WALTER THOMAS**          )          NANCY MAYER WHITTINGTON, CLERK
                                 )                U.S. DISTRICT COURT
      **Plaintiff,**       )
                                 )
      v.                       )
                                 )          Civ. Action No. 05-1784 (RJL)
**NATWAR GANDHI**          )
**Office of the Chief Financial Officer**   )
**of the District of Columbia**          )
                                 )
      **Defendant.**     )

### MEMORANDUM OPINION
(November 29, 2007)[#14]

Walter Thomas ("Thomas" or "plaintiff") has sued Natwar Gandhi, the Chief Financial Officer of the District of Columbia, alleging age, race, sex, and disability discrimination in violation of the 1964 Civil Rights Act, 42 U.S.C. §§ 1981(a) and 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the D.C. Human Rights Act, D.C. Code § 2-1401.11(a)(1) (2000 ed.) ("DCHRA"). Currently before the Court is the defendant's motion for partial summary judgment. For the following reasons, defendant's motion will be GRANTED.

### I. BACKGROUND

Thomas is a sixty-four year-old African-American male who suffers from permanent cornea deficiency. Complaint, ¶ 1. In July 1998, plaintiff began working as a

1



Liaison Officer in the Mission Support Center of the Office of the Chief Financial Officer ("OCFO"). *Id* at ¶ 4. In January 2001, he was transferred to the Department of Tax and Revenue within OCFO as a Support Services Specialist. *Id.* ¶ 4. Due to his impairment, Thomas used an enlarged computer monitor, voice activated software, and special lighting to help his visual focus. Def.'s Mot. Part. Summ. J. ("Def.'s Mot."), p. 2.

In December 2002, OCFO notified Thomas that it was reorganizing OCFO and that all support positions within the office, including the plaintiff's, were being abolished. Pl.'s Opp. to Mot. Summ. J. ("Pl.'s Opp.") p. 2. Thomas was informed that he was eligible to apply for open positions within the newly formed Office of Management and Administration ("OMA") and that all vacancies would be posted for ten business days on the OCFO website and in the OCFO building. *Id.* 2; Def.'s Mot. at p. 3, 6.

Thomas subsequently applied for a position as a Lead Support Specialist[1] ("LSS") within OMA but was not selected. Def's Mot. at p. 3. Instead, the hiring panel selected Barry Edmonds ("Edmonds"), a forty-one year-old African-American male. Def.'s Mot. 4. Because plaintiff had failed to secure a new position at OMA, he was terminated on March 28, 2003. *Id.*

On April 3, 2003, OMA announced vacancies for positions as the Special

---

[1] The vacancy announcement for the LSS position required either a graduate degree in administration or management or one year of specialized experience in support services, the ability to plan, organize and control work involving diverse activities, the ability to gain cooperation of others, and skill in oral and written communication. Def.'s Mot. Ex. 2 p. 5. Although two LSS positions were advertised, the second LSS position was never filled. Def.'s Mot. 4.

2

Assistant to the Director ("SAD") and as a Lead Logistics Management Specialist ("LLMS"). Def.'s Mot. at p. 5. Although the vacancy announcements were posted on the OCFO website and available in the OCFO office, Thomas did not apply for either position. *Id* at p. 6. The LLMS position was withdrawn before interviews were conducted, but OMA ultimately hired Barbara Bryant, a Caucasian female, for the SAD position. *Id.*

In August 2003, Thomas filed discrimination charges with the EEOC and the D.C. Office of Human Rights. *Id.* In June 2005, he was notified of his right to sue. *Id.* Consequently, in September 2005, plaintiff filed suit in this Court alleging that he was not selected for the LSS, SAD, and LLMS positions because of his race, age, gender (Count I) and disability (Count II).

Defendant has moved for summary judgment of plaintiffs race, gender and disability claims as to all three positions, and his age discrimination claims as to the SAD and LLMS positions.[2] Upon review of the relevant caselaw and the entire record herein, defendant's motion will be GRANTED.

## II. ANALYSIS

Under Rule 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[2] Plaintiff has explicitly declined to move for summary judgment of plaintiff's age discrimination claim as to the LSS position.

3

moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where the court finds that facts material to the outcome of the case are at issue, a case may not be disposed of by summary judgment. *Id.* at 248. For the following reasons, the Court concludes that there are no genuine issues of material fact and the defendant is entitled to judgment as a matter of law.

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006). Similarly, the DCHRA makes it unlawful for an employer to take adverse employment actions "wholly or partially for a discriminatory reason based upon the actual or perceived ... race ... of any individual." D.C.Code § 2-1402.11(a), (a)(1). The ADA makes it unlawful for a covered entity to "discriminate against a qualified individual with a disability because of the disability of such individual" with respect to any "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a).

In a suit brought pursuant to Title VII, the DCHRA or the ADA, a plaintiff may

prove his claim of discrimination indirectly under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C.Cir.2001); *Hollins v. Fed. Nat'l Mortgage Ass'n*, 760 A.2d 563, 571 (D.C. 2000). Under this framework, a plaintiff-employee carries the initial burden of establishing, by a preponderance of the evidence, a *prima facie* case of discrimination. *Holcomb v. Powell,* 433 F.3d 889 (D.C. Cir. 2006). Thus, in the context of a non-selection case, the plaintiff must show that: 1) he is a member of a protected class; 2) he was qualified for and applied for an available position; 3) he was considered for and denied the position; and 4) after his rejection, the employer awarded the position to a person no more qualified that the plaintiff. *Id.*

If the plaintiff can establish a *prima facie* case, the burden shifts to the defendant-employer to "articulate a legitimate, nondiscriminatory reason for its actions." *Stella v. Mineta*, 284 F.3d 135, 144 (D.C.Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant can provide such a reason, the burden shifts back to the plaintiff, who must then "demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory." *Id* (citing *McDonnell Douglas* at 804, 93 S.Ct. 1817). Plaintiff, unfortunately, has not met his burden here! How so?

5

**A. Plaintiff's Non-Selection for the SAD and LLM Positions**

First, as to plaintiff's contention that he was not selected for the SAD and LLMS positions because of his age, race, gender and disability; plaintiff must prove that he applied for an available position in order to establish a *prima facie* case. *McDonnell Douglas,* 411 U.S. 792 at 802-05; *Morgan v. Federal Home Loan Mortgage Corp.*, 172 F.Supp.2d 98, 112 (D.D.C. 2001) (holding that African-American plaintiff failed to establish prima facie case of discrimination relating to his non-selection when he did not apply for the position). Here, Thomas *concedes* that he failed to apply for either position. Although he argues that he was a Career Service employee and, therefore, entitled to automatic consideration for the positions pursuant to the reduction in force procedures of the D.C. government, there is no authority for this contention under D.C. law. D.C. Code § 1-608.01(12) (2001). Moreover, even assuming such a provision, there is no evidence that plaintiff was a Career Service employee. Indeed, the June 24, 1998 letter hiring plaintiff to the OCFO explicitly stated that "employment with the . . . OCFO is at will" and "all employees within the OCFO serve at the pleasure of the Chief Financial Officer." Def.'s Mot. Ex. 1A; p. 17.[3] Likewise, Diane Camilleri, the Director of Human Resources in charge of the restructuring process, averred that all OCFO employees were at-will. Def.'s Mot. Ex. 1C; Camilleri Dep. 25: 21-22. Therefore, because Thomas did not apply for the SAD and LLMS positions, he cannot claim discrimination in his non-selection.

---

[3] Moreover, even if plaintiff was entitled to reduction in force procedure, plaintiff's allegations are not timely, as the D.C. Code requires an appeal to be filed no later than thirty calendar days after the effective date of the action. D.C. Code § 1-624.04 (2001).

6

Accordingly, the Court will GRANT summary judgment as to these claims.

**B. Plaintiff's Non-Selection for the Lead Support Specialist Position**

Plaintiff has similarly alleged that he was not selected for the LSS position on account of his age, race, gender and disability. Although defendant concedes that Thomas has established a *prima facie* case, it argues that the person ultimately chosen for the position was better qualified. In response, plaintiff contends that he was significantly more qualified than the person chosen and, therefore, the Court should infer that the defendant's proffered explanation is mere pretext. I disagree.

In reviewing an employer's explanation for failure to hire, courts have consistently declined to serve as a "super-personnel department that reexamines an entity's business decisions." *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)). Although, the factfinder can infer discrimination if the evidence showed that a plaintiff was "significantly better qualified" for the job than the selected candidate, the qualifications gap must be "wide and inexplicable." *Holcomb v. Powell,* 433 F.3d 889, 897 (D.C. Cir. 2006)(quoting *Lathram v. Snow,* 336 F.3d 1085 (D.C. Cir. 2003). Upon review of the record, the Court finds that Thomas has failed to prove such a gap.

First, Edmonds reported extensive support services experience in his application package. Def.'s Mot. Ex. 2, p. 30-33. Although plaintiff also reported considerable relevant experience, the Court has no basis in the record to conclude that the plaintiff was

7

significantly more qualified in this regard.[4] Def.'s Mot. Ex. 2, p. 14-21.

Additionally, the OCFA selection panel—OMA Director Jo Ann Smoak, Logistics and Support Director, Alphonso Lister; and Human Resource Director, Diane Camilleri—unanimously concluded that Mr. Edmonds outperformed the plaintiff in the interview.[5] Indeed, panelist Jo Ann Smoak testified that she was "disappointed in [plaintiff's] interview, in his demeanor, in his lack of knowledge about his basic job, and just in terms of how he presented." Def. Mot. Ex. 3E; Smoak Dep. 158:9-12. Moreover, she found that Edmonds was "definitely" the better candidate because he had the

---

[4] The Court notes that although Thomas has extensive work experience, much of that experience would have been irrelevant to the LSS position. Indeed, Thomas served as a Foreign Service Officer in the State Department between 1971 and 1985, and worked for a private firm involved in international investment projects between 1985 and 1989 and between 1995 and 1996. Def.'s Mot. Ex. 2, p. 30-33. Thomas also reported working for the D.C. Department of Education as a coordinator of bilingual education and for the D.C. Department of Human Services as a coordinator for refugee resettlement between 1989 and 1995. *Id.* As to support services experience, Thomas worked as an operations specialist in the OCFO between 1996 and 1998, and as a support services specialist in OCFO between 1998 and 2004. *Id.* In contrast, Edmonds has spent the bulk of his career in the support service field. Between 1981 and 1989, Edmonds worked as a purchasing agent, procurement officer, maintenance coordinator, administrative assistant supervisor and property inventory specialist for the D.C. City Council where he, *inter alia,* supervised the administrative staff, negotiated bids with outside vendors and managed 15 vehicles. Def.'s Mot. Ex. 2, p. 32-33. From 1989 and 2001, Edmonds was a district manager and circulation supervisor for the Wall Street Journal where he supervised and coordinated the delivery of the Wall Street Journal and other publications in the area, maintained the budget for the "AD Operation" and handled payroll processing for more than twenty employees. *Id.* Similarly, between 2001 and 2003, Edmonds worked as an area manager for the Washington Times where he was responsible for managing and coordinating delivery of the newspaper throughout Prince George's County, conducted sales presentations and handled payroll processing and budgeting for his area. *Id.*

[5] According to the defendant, the interview was the primary factor in the selection decision; with each panelist ranking the candidates based on their responses to the same seven questions. Pl.'s Opp. Ex. 4; Camilleri Dep. 193:7-8. Out of a possible score of 85, plaintiff scored 57 while Edmonds scored 68. *Id.*

experience and temperament to do the job and seemed excited to be there. *Id.* 168:15-17; 169:16-17; 167;2-3. Likewise, panelist Alphonso Lister found that Edmonds was the better candidate because of his knowledge, experience, background, interview, and "positive go-getter type attitude." Def.'s Mot. Ex 3F; Lister Dep. 40:3-17. Panelist Diane Camilleri further noted that Edmonds "demonstrated knowledge of the methods and procedures for providing or performing a variety of functions applicable to the position to be filled." Pl.'s Opp. Ex. 3; Camilleri Dep. 102:6-9.

Given this evidence, the Court cannot conclude that plaintiff was significantly more qualified than Edmonds, nor that the defendant's proffered explanation of plaintiff's non-selection was pretextual. Accordingly, the Court will GRANT defendant's motion for summary judgment as to plaintiff's race, gender or disability claims relating to the LSS position.

## CONCLUSION

Therefore, for all of the reasons stated above, defendant's motion for partial summary judgment is GRANTED.

*[signature]*
RICHARD J. LEON
United States District Judge